### SMELTZER v. ST. LOUIS & S. F. R. CO.

(Circuit Court, W. D. Arkansas, Ft. Smith Division. February 24, 1909.)

COURTS (§ 489*)—CONCURRENT JURISDICTION—STATE AND FEDERAL COURT—INTERSTATE COMMERCE ACT—ACTION FOR LOSS OF GOODS.

Section 20 of the interstate commerce act (Act Feb. 4, 1887, c. 104, 24 Stat. 386 [U. S. Comp. St. 1901, p. 3169]), as amended by the Hepburn act (Act June 29, 1906, c. 3591, § 7, 34 Stat. 593 [U. S. Comp. St. Supp. 1907, p. 906]), which requires the initial carrier on receiving an interstate shipment to give a through bill of lading therefor, and gives a right of action against the carrier issuing it for any loss or damage to the property caused by such carrier or any connecting carrier, does not limit jurisdiction of such an action to the federal courts, and, where the amount involved exceeds $2,000, such courts and the state courts have concurrent jurisdiction under the general provisions of the federal judiciary act, but where the amount involved is less a state court alone has jurisdiction.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 489.*]

At Law. On demurrer to complaint.

Sam Chew, for plaintiff.
B. R. Davidson, for defendant.

ROGERS, District Judge. This case is before me again. This time on demurrer to the complaint. The only ground of demurrer pressed in the argument is want of jurisdiction in the court.

The case is here on removal from the circuit court of Crawford county, Ark. The contention is that under Interstate Commerce Act Feb. 4, 1887, c. 104, 24 Stat. 379 (U. S. Comp. St. 1901, p. 3154),

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and amendments thereto (Act June 29, 1906, c. 3591, 34 Stat. 384 [U. S. Comp. St. Supp. 1907, p. 892]), exclusive jurisdiction is conferred on the District and Circuit Courts of the United States, or upon the Interstate Commerce Commission, and therefore the state court had no jurisdiction of the case when brought, and this court acquired none by removal.

In the opinion of the court the contention is without merit. The following cases are cited to support the demurrer: Haracovic v. Standard Oil Co. (C. C.) 105 Fed. 785; Kalispell Lumber Co. v. Great Northern Ry. Co. (C. C.) 157 Fed. 845; Van Patten v. Chicago, M. & St. P. R. Co. (C. C.) 74 Fed. 981; United States v. Mooney, 116 U. S. 104, 6 Sup. Ct. 304, 29 L. Ed. 550; United States v. Atchison, T. & S. F. Ry. Co. (C. C.) 142 Fed. 187; Central Stock Yards Co. v. Louisville & N. R. Co. (C. C.) 112 Fed. 823; Northern Pac. Ry. Co. v. Pacific Coast Lumber Mfrs.' Ass'n (C. C. A.) 165 Fed. 1. I do not think any of these cases in point. They relate to actions brought under sections 8 and 9 of the act of February 4, 1887, known as the "Interstate Commerce Act." When that act went into effect no such suit as the one now under consideration was authorized under then existing laws. This suit was brought under section 7 of the act of June 29, 1906, known as the "Hepburn Act." 34 Stat. 584, c. 3591 (U. S. Comp. St. Supp. 1907, p. 892). That section, it is true, is an amendment of section 20 of the act of February 4, 1887, but the section as it stood in the original act contained no provision such as that under which this suit is brought. The provision under which this suit is brought is as follows:

"That any common carrier, railroad or transportation company receiving property for transportation from a point in one state to a point in another state shall issue a receipt or bill of lading therefor and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass, and no contract, receipt, rule, or regulation shall exempt such common carrier, railroad, or transportation company from the liability hereby imposed: Provided, that nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law.

"That the common carrier, railroad or transportation company issuing such receipt or bill of lading shall be entitled to recover from the common carrier, railroad or transportation company on whose line the loss, damage, or injury shall have been sustained the amount of such loss, damage or injury as it may be required to pay to the owners of such property, as may be evidenced by any receipt, judgment, or transcript thereof."

That paragraph relates solely to suits to be brought by shippers over interstate lines for loss or damage to their goods. No provision is made by the section as to what courts the suits shall be brought in, for losses or injuries so sustained. The contention is that the provisions found in sections 8 and 9 of the act of February 4, 1887, and the provision found in the previous part of the section from which the above quotation is taken, applies to this class of actions. I am clearly of the opinion that this contention is unsound. The provision found in section 7 of the act of June 29, 1906, confers jurisdiction on the Circuit and District Courts upon the application of the At-

torney General of the United States, at the request of the Interstate Commerce Commission, to compel, by mandamus, railroad companies to comply with the provisions of the Interstate Commerce act and its amendments; but that is all that it does; it has no application to this class of cases.

Sections 8 and 9 of the original interstate commerce act of February 4, 1887, must be considered with reference to the provisions of the act as it stood when enacted, and to the purpose and scope of the act. There was not the remotest reference in that act to the liability of an initial carrier for losses on its connecting lines, nor any provision requiring a railroad engaged in interstate commerce to give a through bill of lading, or withdrawing its power to limit, by rule, regulation, or contract, its liability to losses occurring on its own line. Sections 8 and 9 of the act of February 4, 1887, therefore, when enacted, could not have had any application to such an action as the one at bar, because no such action then existed. The very language used makes it clear that those sections have no application to such an action as this. Those sections are as follows:

"Sec. 8. That in case any common carrier subject to the provisions of this act shall do, cause to be done, or permit to be done any act, matter or thing in this act prohibited or declared to be unlawful, or shall omit to do any act, matter, or thing in this act required to be done, such common carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation of the provisions of this act, together with a reasonable counsel or attorney's fee, to be fixed by the court in every case of recovery, which attorney's fee shall be taxed and collected as part of the costs in the case.

"Sec. 9. That any person or persons claiming to be damaged by any common carrier subject to the provisions of this act may either make complaint to the commission as hereinafter provided for, or may bring suit in his or their own behalf for the recovery of the damages for which such common carrier may be liable under the provisions of this act, in any District or Circuit Court of the United States of competent jurisdiction; but such person or persons shall not have the right to pursue both of said remedies, and must in each case elect which one of the two methods of procedure herein provided for he or they will adopt. In any such action brought for the recovery of damages the court before which the same shall be pending may compel any director, officer, receiver, trustee, or agent of the corporation or company defendant in such suit to attend, appear, and testify in such case, and may compel the production of the books and papers of such corporation or company party to any such suit; the claim that any such testimony or evidence may tend to criminate the person giving such evidence shall not excuse such witness from testifying, but such evidence or testimony shall not be used against such person on the trial of any criminal proceeding."

Manifestly they relate to the right of any one who has been injured to recover such damages as he may have suffered by the failure of the carrier to do what the act required, or for doing the things the act forbids.

But this suit is not brought because the carrier did something it was forbidden by the act to do, or neglected to do anything that the act commanded. All the cases cited above are of the character indicated, and have no application to a case like the one at bar. This is simply a suit for damages for breach of a contract, either entered into voluntarily, without reference to the act, or in pursuance of, or in conformity to, it. In either event, it does not fall under the sec-

tions above quoted, and hence is not required to be brought in a District or Circuit Court of the United States, or before the Interstate Commerce Commission.

The question then arises, if Congress creates a new cause of action, and, by the act creating it, designates no court in which the suit shall be brought, what courts have jurisdiction? This question was before the Supreme Court in Norwich Company v. Wright, 13 Wall. 104, 20 L. Ed. 585. An examination of the act under which that suit was brought will show that it creates a new cause of action which under the general law belonged to the admiralty jurisdiction. It related wholly to losses and damages sustained on the high seas. That act did not designate any court in which cases created by the act might be tried, but did say, "the owner or owners of the ship or vessel, or any of them, may take the appropriate proceeding in any court," for certain purposes provided. The act differs from the one under consideration in that respect only, for the latter makes no reference to courts in which the shipper may institute suits for the relief provided. The Supreme Court in that case said, on the question of jurisdiction:

"The act does not state what court shall be resorted to, nor what proceedings shall be taken; but that the parties, or any of them, may take 'the appropriate proceedings in any court, for the purpose of apportioning the sum for which,' etc. Now, no court is better adapted than a court of admiralty to administer precisely such relief. It happens every day that the proceeds of a vessel, or other fund, is brought into that court to be distributed amongst those whom it may concern. Claimants are called in by monition to present and substantiate their respective claims; and the fund is divided and distributed according to the respective liens and rights of all the parties. Congress might have invested the Circuit Courts of the United States with the jurisdiction of such cases by bill in equity, but it did not. It is also evident that the state courts have not the requisite jurisdiction. Unless, therefore, the District Courts themselves can administer the law, we are reduced to the dilemma of inferring that the Legislature has passed a law which is incapable of execution. This it never to be done if it can be avoided. We have no doubt that the District Courts, as courts of admiralty and maritime jurisdiction, have jurisdiction of the matter; and this court undoubtedly has the power to make all needful rules and regulations for facilitating the course of proceeding."

This decision was followed in Elwell v. Geibel and Another (C. C.) 33 Fed. 71, and was also approved by the Supreme Court in Providence & N. Y. Steamship Company v. Manufacturing Company, 109 U. S. 578, 3 Sup. Ct. 379, 617, 27 L. Ed. 1038. The statute under which those suits were brought ousted the jurisdiction of all courts, state and federal, except the District Courts of the United States, because the subject-matter was maritime, and the general jurisdiction of the federal courts in all admiralty matters (with certain specified exceptions) is conferred by general statutes of the United States on the United States District Courts (see jurisdiction of District Courts, in judiciary act). These cases, I think, decide the principle involved here.

We must look, then, to the judiciary act to see what courts, under the general law, have jurisdiction in like cases, otherwise we should have the anomaly spoken of in Norwich Company v. Wright, "that the Legislature has passed a law which is incapable of execution,"

which the court, in that case, said "is never to be done if it can be avoided." By Act March 3, 1875, c. 137, 18 Stat. 470, as amended by the act of March 3, 1887, c. 373, 24 Stat. 552, as corrected by Act Aug. 13, 1888, c. 866, 25 Stat. 433 (U. S. Comp. St. 1901, p. 508), it is provided:

"That the Circuit Courts of the United States shall have original cognizance, concurrent with the courts of the several states, of all suits of a civil nature, at common law or in equity, where the matter in dispute exceeds, exclusive of interest and costs, the sum or value of two thousand dollars, and arising under the Constitution or laws of the United States, or treaties made, or which shall be made under their authority, or in which controversy the United States are plaintiffs or petitioners, or in which there shall be a controversy between citizens of different states, in which the matter in dispute exceeds, exclusive of interest and costs, the sum or value aforesaid," etc.

By this statute it is plain that the jurisdiction is concurrent in the Circuit Courts of the United States and the state courts in all common-law cases where the amount in dispute, exclusive of interest and costs, exceeds the sum of $2,000, if the suit is between citizens of different states or arises under the Constitution and laws of the United States. This case was removed here on the ground of diversity of citizenship, and, I think, might also have been removed on the additional ground that it was a suit arising under the Constitution and laws of the United States. It might have been originally brought here on either ground, and was therefore removable under the act of March 3, 1887, as corrected by the act of August 3, 1888; and suits for $2,000 and less must be brought in the state courts, otherwise jurisdiction obtains in no court, state or federal, for that class of cases, and the act of Congress, to that extent, is unenforceable. Any other conclusion would not only nullify the twentieth section of the Hepburn act, under consideration, but many other acts of deep concern to the country, among others, Act May 30, 1908, c. 225, 35 Stat. 476, "to promote the safety of employees on railroads," Act April 22, 1908, c. 149, 35 Stat. 65, known as the "Employer's Liability Act," Act June 29, 1906, c. 3594, 34 Stat. 607 (U. S. Comp. St. Supp. 1907, p. 918), known as the "Act to prevent cruelty to animals while in transit," and others which might be cited.

The demurrer must be overruled, and it is so ordered.